1   Donald L. Myles, Jr., Bar #007464
    Ryan D. Pont, Bar #033391
2   JONES, SKELTON & HOCHULI, P.L.C.
    40 North Central Avenue, Suite 2700
3   Phoenix, Arizona 85004
    Telephone: (602) 263-1700
4   Fax: (602) 200-7842
    dmyles@jshfirm.com
5   rpont@jshfirm.com

6   Attorneys for Defendant Massachusetts
    Mutual Life Insurance Company
7

8               **UNITED STATES DISTRICT COURT**

9                    **DISTRICT OF ARIZONA**

10  Richard C. Brenke,                    NO. 2:20-cv-00056-MTL

11                          Plaintiff,    **MASSACHUSETTS MUTUAL
                                          LIFE INSURANCE COMPANY'S**
12          v.                            **ANSWER, AFFIRMATIVE
                                          DEFENSES, AND
13  Massachusetts Mutual Life Insurance   COUNTERCLAIMS**
    Company; Treloar & Heisel, Inc.; John A.
14  Adcock and Jane Doe Adcock,

15                          Defendants.

16  Massachusetts Mutual Life Insurance
    Company,
17
                            Counterclaimant,
18
19          v.

20  Treloar & Heisel, Inc.; John A. Adcock and
    Shannon Adcock,
21
                            Counterdefendants.
22

23          Defendant Massachusetts Mutual Life Insurance Company ("MassMutual"),

24  by and through its undersigned attorneys, hereby responds to the Complaint as follows:

25               **Parties, Jurisdiction, and Venue**

26          1.      Admitted upon information and belief.

27

28

2. Denied as stated. MassMutual is a mutual life insurance company organized pursuant to the laws of the Commonwealth of Massachusetts, with its principal place of business in Springfield, Massachusetts. At all relevant times hereto, MassMutual was authorized to do business in Arizona.

3. Admitted upon information and belief.

4. MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

5. The averments set forth in this paragraph are not directed to MassMutual, and no response to the allegations in this paragraph is required. To the extent a response is required, MassMutual lacks knowledge and information sufficient to form a belief as to the truth of the averments set forth in this paragraph, and they are therefore denied.

6. The averments in this paragraph constitute legal conclusions to which no response is required. To the extent a response is required, they are denied.

7. The averments in this paragraph constitute legal conclusions to which no response is required. To the extent a response is required, they are denied.

8. The averments in this paragraph constitute legal conclusions to which no response is required.

9. The averments in this paragraph constitute legal conclusions to which no response is required.

10. The averments in this paragraph constitute legal conclusions to which no response is required.

11. The averments set forth in this paragraph are not directed to MassMutual, and no response to the allegations in this paragraph is required.

**Allegations Common to All Counts**

12. Admitted in part; denied in part. MassMutual admits only that Plaintiff worked as a pediatric dentist. MassMutual lacks knowledge and

information sufficient to form a belief as to the truth of the remaining averments set forth in this paragraph, and they are therefore denied.

13.     The averments in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is deemed required, they are denied.

14.     MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph.

15.     Admitted.

16.     Admitted in part; denied in part.  Policy No. 8467365 is a written document that speaks for itself.  To the extent the averments set forth in this paragraph are inconsistent with the policy, they are denied.

17.     Denied.  The policy is a written document that speaks for itself.  To the extent the averments set forth in this paragraph are inconsistent with the policy, they are denied.

18.     Admitted.

19.     MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

20.     MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

21.     MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

22.     MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

23.     MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

24.     MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

25.   The averments in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, they are denied.

26.   Denied.

27.   Admitted in part; denied in part.  MassMutual admits only that it offered "own occupation" disability income insurance coverage.  MassMutual lacks knowledge or information sufficient to form a belief about the remaining averments in this paragraph, and they are therefore denied.

28.   MassMutual lacks knowledge or information sufficient to form a belief about the averments in this paragraph, and they are therefore denied.

29.   Admitted in part; denied in part.  MassMutual admits that Plaintiff claimed benefits under the policy and in support thereof asserted that he suffered from cervical disc degeneration and arthritis.  The remaining averments in this paragraph are denied.

30.   Admitted.

31.   Denied.  By way of further response, on February 19, 2014, MassMutual provided Plaintiff with claim forms.  On February 27, 2014, Plaintiff returned the claim forms to MassMutual.

32.   Admitted.

33.   MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

34.   Admitted upon information and belief.

35.   Admitted upon information and belief.

36.   Denied.

37.   MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

38.   MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

39.   Denied.

40.  MassMutual lacks knowledge or information sufficient to form a belief about the truth of the averments in this paragraph, and they are therefore denied.

41.  Denied.

42.  Denied.

43.  Admitted in part; denied in part.  MassMutual admits only that it acknowledged coverage for the claim on December 14, 2015, before which Plaintiff failed to timely submit proof of his claimed disability, including statements from his attending physicians.  MassMutual further admits that it accepted Plaintiff's claim for total disability benefits based in part on his numerous representations that he stopped performing dental work as of January 2014 and was not working in any other occupation.  The remaining averments in this paragraph are denied.

44.  Admitted in part; denied in part.  MassMutual admits only that it paid Plaintiff $363,120 in benefits for the period from April 1, 2014, through December 31, 2015.  The remaining averments in this paragraph are denied.  MassMutual specifically denies that such benefits were "past benefits owed" because they were not "owed" until MassMutual accepted Plaintiff's claim.

45.  Denied as stated.  By way of further response, based on Plaintiff's repeated representations that he stopped performing dental work as of January 2014, MassMutual considered (1) January 1, 2014, as the commencement date of disability, and (2) April 1, 2014, as the date on which the policy's waiting period expired.

46.  Admitted in part; denied in part.  MassMutual admits only that, after it accepted Plaintiff's claim in December 2015, it paid Plaintiff $72,236.08 in Retire Guard Rider benefits.  The remaining averments in this paragraph are denied.  MassMutual specifically denies that such benefits were "past due" because they were not "due" until MassMutual accepted Plaintiff's claim.

47.  Admitted.

48.  Denied.

49.   Denied.

50.   Admitted in part; denied in part.  The November 10, 2017 letter is a written document that speaks for itself.  To the extent the averments in this paragraph are inconsistent with the letter, they are denied.

51.   Admitted in part; denied in part.  The December 29, 2017 letter is a written document that speaks for itself.  To the extent the averments in this paragraph are inconsistent with the letter, they are denied.  By way of further response, in June 2016, Plaintiff advised that he was performing work in another occupation.  Plaintiff subsequently disavowed his representations.

52.   Admitted.

53.   Denied.

54.   Denied.

55.   Admitted.

56.   Denied as stated.  MassMutual admits only that it paid $71,218.37 in total disability benefits to Plaintiff under a reservation of rights on or about January 14, 2019, and that such benefits were for the period of October 1 through December 31, 2018.

57.   Admitted.

58.   Denied.

59.   Admitted in part; denied in part.  MassMutual admits only that, in accordance with the policy, it has requested that Plaintiff provide MassMutual with information and documentation so that MassMutual can determine the extent of its liability, if any, under the policy.  The remaining averments in this paragraph are denied.

60.   Admitted.

61.   Admitted.

62.   Denied.

63.   Denied.

64. Denied.

65. Denied.

### **Count One:  Breach of Contract (MassMutual)**

66. MassMutual incorporates by reference each of its responses to the preceding paragraphs.

67. Admitted.

68. Admitted.

69. Denied.

70. Denied.

71. Admitted in part; denied in part.  MassMutual admits only that it closed Plaintiff's claim as of December 31, 2017, due to Plaintiff's failure to provide proof of disability.  In January 2019, MassMutual reopened the claim, and in November 2019 informed Plaintiff that it would close his claim if he again failed to provide proof of disability.  The remaining averments in this paragraph are denied.

72. Denied.

73. Denied.

74. The averments in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, they are denied.

### **Count Two:  Breach of the Obligation of Good Faith and Fair Dealing (MassMutual)**

75. MassMutual incorporates by reference each of its responses to the preceding paragraphs.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

1    81.    Denied.

2    82.    Denied.

3    83.    Denied.

4    84.    Denied.

5    85.    Denied.

6    86.    Denied.

7    87.    Denied.

8    88.    Denied.

9    89.    Denied.

10    90.    The averments in this paragraph constitute legal conclusions to which

11    no response is required.  To the extent a response is required, they are denied.

### Count Three:  Negligence (Adcock and TAH)

13    91.    MassMutual incorporates by reference each of its responses to the

14    preceding paragraphs.

15    92.    The averments set forth in this paragraph are not directed to

16    MassMutual, and no response to the allegations in this paragraph is required.

17    93.    The averments set forth in this paragraph are not directed to

18    MassMutual, and no response to the allegations in this paragraph is required.

19    94.    The averments set forth in this paragraph are not directed to

20    MassMutual, and no response to the allegations in this paragraph is required.

21    95.    The averments set forth in this paragraph are not directed to

22    MassMutual, and no response to the allegations in this paragraph is required.

23    96.    The averments set forth in this paragraph are not directed to

24    MassMutual, and no response to the allegations in this paragraph is required.

25    97.    The averments set forth in this paragraph are not directed to

26    MassMutual, and no response to the allegations in this paragraph is required.

27    98.    The averments set forth in this paragraph are not directed to

28    MassMutual, and no response to the allegations in this paragraph is required.

99.   Denied.

100.   The averments set forth in this paragraph are not directed to MassMutual, and no response to the allegations in this paragraph is required.

101.   The averments set forth in this paragraph are not directed to MassMutual, and no response to the allegations in this paragraph is required.

**Count Four:  Declaratory Relief (MassMutual)**

102.   MassMutual incorporates by reference each of its responses to the preceding paragraphs.

103.   Denied.

104.   Denied.

105.   Denied.

106.   Denied.

107.   Admitted.

108.   Admitted in part; denied in part.  MassMutual admits only that this paragraph accurately sets forth the relief sought by Plaintiff.  MassMutual denies that Plaintiff is entitled to the requested relief.

109.   Admitted in part; denied in part.  MassMutual admits only that this paragraph accurately sets forth the relief sought by Plaintiff.  MassMutual denies that Plaintiff is entitled to the requested relief.

110.   Admitted in part; denied in part.  MassMutual admits only that this paragraph accurately sets forth the relief sought by Plaintiff.  MassMutual denies that Plaintiff is entitled to the requested relief.

111.   Admitted in part; denied in part.  MassMutual admits only that this paragraph accurately sets forth the relief sought by Plaintiff.  MassMutual denies that Plaintiff is entitled to the requested relief.

112.   The averments in this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, they are denied.

113. The averments set forth in this paragraph are not directed to MassMutual, and no response to the allegations in this paragraph is required.

## Prayer for Relief as to Defendant MassMutual

MassMutual denies that Plaintiff is entitled to any of the relief sought in this lawsuit both as a matter of law and fact.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

MassMutual has not yet commenced nor completed substantial discovery. Without prejudice to its denials or admitting any of the allegations in the complaint, MassMutual alleges each of the following as affirmative defenses and expressly reserves all of its rights to allege additional defenses, and/or to seek leave of Court to amend its Affirmative Defenses to allege additional defenses, when and if facts supporting such defenses become known to it.

## FIRST AFFIRMATIVE DEFENSE

Under the policy, Plaintiff must provide proof of his claimed disability, and he is ineligible for total disability benefits if he is working at any other occupation. Plaintiff has repeatedly misrepresented or omitted material facts, failed to submit proof of his disability, and admitted on multiple occasions that he was working in another occupation. Accordingly, MassMutual acted at all times according to the terms of the policy and did not breach the contract.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff failed to state a claim against MassMutual upon which relief may properly be granted.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because MassMutual acted in the utmost good faith at all times material hereto.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the terms of the policy.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because to the extent that any of Plaintiff's alleged damages were allegedly caused by the acts or omissions of MassMutual, there was a superseding and/or intervening cause for such damages for which MassMutual bears no obligation, responsibility, or liability.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because the injuries and damages alleged by Plaintiff were proximately caused and/or contributed to by the acts, omissions, negligence, and/or intentional misconduct of third parties, and were not caused by MassMutual.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff is estopped from asserting any of the claims alleged against MassMutual.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff failed to allege facts establishing a lawful basis for the award of punitive damages.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's conduct concerning the matters alleged in the complaint constitute carelessness, negligence, misconduct, and/or bad faith, or Plaintiff was otherwise at fault, and the resulting injuries, if any, allegedly sustained by Plaintiff were proximately caused and contributed to, in whole or in part, by the conduct of Plaintiff.

## **MASSMUTUAL'S COUNTERCLAIMS AGAINST RICHARD BRENKE**

Defendant/Counterclaim-Plaintiff Massachusetts Mutual Life Insurance Company hereby files the following counterclaims against Plaintiff/Counterclaim-Defendant Richard Brenke, and in support thereof avers as follows:

### **INTRODUCTION**

1. These counterclaims concerns at least $444,167 in disability income insurance benefits that MassMutual overpaid to Plaintiff after Plaintiff misstated the date he stopped performing work as a dentist, omitted to inform MassMutual that he was working in another occupation, and refused to produce information that he is duly obligated to provide under the terms of his policy.

2. Plaintiff is a licensed dentist, the owner of his own dental practice, and insured under MassMutual disability income insurance policy no. 8467365. *See* **Exhibit A** (Policy).

3. The policy provides different types of benefits (total disability, partial disability, and RetireGuard) which are meant to help replace Plaintiff's substantial income in the event that he becomes disabled. If Plaintiff is totally disabled – *i.e.*, unable to perform the duties of his occupation and not working in any other occupation – the policy provides total disability and RetireGuard benefits of more than $21,000 per month. If Plaintiff is partially disabled – *i.e.*, performing work in an occupation but losing income due to a disability – the policy provides a partial disability benefit that is based on the amount of lost income.

4. In 2014, Plaintiff submitted a claim under the policy for total disability benefits. In support of his claim, Plaintiff repeatedly advised MassMutual that he stopped working in January 2014 due to a disabling back/neck condition.

5. After MassMutual accepted the claim and began paying Plaintiff total disability and RetireGuard benefits, Plaintiff – under the belief that he would continue to receive total disability benefits as long as he was not performing dental work – informed MassMutual in writing and orally that he was managing his dental practice on a daily

basis.

6.     Plaintiff, however, was eligible only for partial disability benefits if he was working.  And because Plaintiff's income was more than $600,000 per year, his partial disability benefits would have been substantially less than the total disability and RetireGuard benefits he had been receiving.

7.     MassMutual informed Plaintiff that he would receive partial disability benefits because he was working, and requested information from Plaintiff concerning the work he was performing.

8.     Rather than providing MassMutual with the requested information, Plaintiff changed his story and told MassMutual that he was not managing his practice and was only going into the office to socialize.  Further, Plaintiff threatened litigation against MassMutual if it continued to request information from him, and submitted a complaint to the Arizona Department of Insurance.

9.     After MassMutual informed the Arizona Department of Insurance that the requested information was necessary to evaluate Plaintiff's eligibility for benefits due to his written and oral representations that he was managing his practice, Plaintiff produced some of the information MassMutual requested.

10.     When Plaintiff turned over that information, he informed MassMutual that some of his prior statements regarding his claim were inaccurate.  Specifically, Plaintiff informed MassMutual that he continued performing dental work for almost a full year after the date he claimed to have stopped.  Further, Plaintiff made conflicting statements regarding his management of the practice, as he stated that he ceased being "substantively involved" with the practice since he informed MassMutual that he was managing it, but also that he never managed the practice.

11.     MassMutual's investigation found that Plaintiff was still visiting his office on a daily basis.  As a result, MassMutual informed Plaintiff that:  (1) he had been and was continuing to manage his dental practice; (2) an overpayment of benefits had occurred because Plaintiff was partially rather than totally disabled, and because of

1    Plaintiff's misstatements regarding when he ceased working as a dentist; and (3) it needed

2    additional information from Plaintiff in order to fully evaluate the overpayment and

3    Plaintiff's ongoing claim for benefits.

4        12.    Plaintiff contests MassMutual's position, refuses to return the overpaid

5    benefits, and continues to refuse to provide MassMutual with the information that he is

6    duly obligated to provide.

7        13.    Through these counterclaims, MassMutual seeks to recoup an overpayment

8    of at least $444,167 in benefits, $114,249 of which was paid to Plaintiff while he was still

9    working as a dentist, and $329,919 of which was paid to Plaintiff after he stopped

10   working as a dentist and before he admitted to managing his practice.

## PARTIES

12       14.    Massachusetts Mutual Life Insurance Company is a mutual life insurance

13   company organized pursuant to the laws of the Commonwealth of Massachusetts, with its

14   principal place of business in Springfield, Massachusetts.

15       15.    Plaintiff is an individual who resides at 2511 E. Lamar Road, Phoenix, AZ

16   85016, and a citizen of the State of Arizona.

## JURISDICTION AND VENUE

18       16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

19   This action arises between citizens of different states and in which the matter in

20   controversy exceeds $75,000.   MassMutual is a citizen of the Commonwealth of

21   Massachusetts, and Plaintiff is a citizen of the State of Arizona.

22       17.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as

23   Plaintiff is a resident of the State of Arizona and a substantial part of the events or

24   omissions giving rise to MassMutual's claims occurred within this judicial district.

## BACKGROUND

26       18.    Plaintiff is insured under MassMutual disability income insurance policy no.

27   8467365.  *See* Exhibit A.  The relevant definitions in the policy are as follows:

28

**TOTAL DISABILITY**:  The occurrence while this Policy is In Force of a condition caused by a Sickness or Injury, in which the Insured cannot perform the main duties of his/her Occupation and ***is not working at any other occupation***.  The Insured must be under a Doctor's Care.

\*      \*      \*      \*

**TOTAL DISABILITY BENEFIT**:  We will pay the Total Disability Monthly Benefit [of $17,000 plus cost of living rider increases (the "Maximum Monthly Benefit")] if the Insured is Totally Disabled.

\*      \*      \*      \*

**PARTIAL DISABILITY**:  The Insured is Partially Disabled if he/she:
- is suffering a current Disability;
- ***is working at his/her Occupation or another occupation***;
- has a Loss of Income of at least 20% of Pre-disability Income;
- can show a Demonstrated Relationship between the Loss of Income and the current Disability; and
- is under a Doctor's Care.

**PARTIAL DISABILITY BENEFITS**:  During the first 12 months of Disability, any monthly payment for Partial Disability will equal 50% of the [Maximum Monthly Benefit].

Beginning with the 13th month following the start of Disability, any Monthly Benefit will be determined as follows:

- If the Insured's Loss of Income is between 20% and 75% of Pre-disability Income, the Monthly Benefit will be determined as follows:

$$[\text{Maximum Monthly Benefit}] \; x \; \frac{Loss\ of\ Income}{Pre-disability\ Income}$$

- If the Insured's Loss of Income exceeds 75% of Pre-disability Income, We will pay the [Maximum Monthly Benefit].

\*      \*      \*      \*

The [RetireGuard] Rider provides a monthly benefit for the

Insured's Total Disability if:

- the Insured becomes Totally Disabled while this Rider is In Force; and
- Total Disability continues to the end of the Waiting Period for this Rider; and
- the Maximum Benefit Period for this Rider has not ended; and
- the Insured submits forms provided by Us sufficiently completed to establish a Trust.

*See id.* (emphases added).

19. Plaintiff would receive the Maximum Monthly Benefit if he was (1) totally disabled (in which case he would also receive RetireGuard benefits), or (2) partially disabled and losing more than 75% of his pre-disability income. If Plaintiff was partially disabled and losing between 20% to 75% of his pre-disability income, then he would receive a monthly benefit equal to the Maximum Monthly Benefit times the percentage of lost income.

20. In February 2014, Plaintiff submitted a claim for benefits. In support of his claim, Plaintiff stated that he was totally disabled (*i.e.*, unable to perform the duties of his occupation and not working in any occupation) as of January 2014 due to a back/neck disorder.

21. During MassMutual's claim evaluation, Plaintiff repeatedly stated that he had not worked since January 2014, and threatened to file a lawsuit against MassMutual if it did not accept his claim.

22. Based in part on Plaintiff's representations, MassMutual accepted the claim and paid Plaintiff total disability benefits.

23. Under the policy, Plaintiff is required to provide proof of continuing disability – primarily through disability progress reports. The relevant policy provisions are as follows:

> Proof of continuing Disability must be furnished monthly or at intervals as We may require.

> From time to time We may also require satisfactory proof of the Insured's Income before and during the Disability….
>
> We may also examine the financial records of the Insured. If the Insured owns any portion of any profession or business, including any corporation, We may also examine the financial records of that profession, business or corporation. This will be done as often as is reasonably necessary during the Disability. Examinations will be done by Us or a financial examiner We choose…. If the Insured does not make a reasonable effort to submit such examinations, We may stop paying benefits.

*See* **Exhibit A**.

24.     In June 2016, Plaintiff submitted a disability progress report on which he answered "Yes" in response to a question regarding whether he was performing work in any occupation. When asked to describe the work he was performing, Plaintiff himself wrote that he was managing his dental practice. As shown below, Plaintiff signed and dated the report and certified that he had "carefully read the foregoing questions and that each answer [he provided] is true and complete to the best of [his] knowledge and belief[,]" and that he "under[stood] that MassMutual or its representatives may request from time to time any documents, which [he] has in [his] possession, supporting this statement, and [he] hereby agree[d] to furnish them upon request."



25.     In a subsequent phone call with a MassMutual claims representative, Plaintiff confirmed that he would go into the office for several hours each day to manage his practice. When the MassMutual representative informed Plaintiff that he would not be eligible for total disability benefits if he was working, Plaintiff quickly responded that

someone was at his door and that he would call back later. Plaintiff never called the claims representative back.

26. The payroll records of Plaintiff's dental practice support that Plaintiff was managing his dental practice, as his wife was paid for her work as the office manager only until 2014 – *i.e.*, the year Plaintiff claimed to have stopped performing dental work – but not after.

27. Because Plaintiff is ineligible for total disability benefits if he is working, MassMutual requested additional information from Plaintiff (*i.e.*, proof of disability (*see supra* ¶ 23)) to evaluate his eligibility for total or partial disability benefits going forward, and to determine whether he was overpaid benefits.

28. In response, Plaintiff disavowed his prior written and oral representations on the disability progress report and phone call, and claimed that he was not managing his dental practice. Plaintiff also stated (erroneously) that he would still qualify for total disability benefits even if he was managing his practice, so long as he was not performing dental work. Additionally, despite the fact it was required by the policy, Plaintiff refused to provide MassMutual with the information it requested, and threatened to file a lawsuit against MassMutual if it continued to request such information.

29. MassMutual then conducted surveillance on Plaintiff and found that he was, in fact, going into his dental office for several consecutive hours per day, sometimes entire days. Accordingly, MassMutual again requested information from Plaintiff regarding the work he was performing.

30. Instead of providing the requested information to MassMutual or filing a lawsuit, Plaintiff filed a complaint with the Arizona Department of Insurance.

31. MassMutual informed the Arizona Department of Insurance that in light of the representations Plaintiff made on the disability progress report that he certified, and subsequent phone call, he was obligated under the policy to provide the requested information to allow MassMutual to evaluate his past and present eligibility for benefits.

32. In October 2018, Plaintiff agreed to produce some but not all of the

information that MassMutual requested. However, when he produced the information, he explained that his prior "written statements … regarding when [he] stopped seeing patients were mistaken." Although Plaintiff had stated on multiple occasions that he ceased performing work as a dentist as of January 2014, Plaintiff now said that he ceased performing dental work "in the September to December 2014 time frame." Plaintiff also stated that he "has not been substantively involved with the dental practice since MassMutual brought up that disputed issue in June 2016."

33. The information Plaintiff provided made it clear that MassMutual needed additional information to evaluate, *inter alia*, the amount of benefits that Plaintiff had been overpaid, and whether he was eligible for benefits going forward. Plaintiff, however, has continued to refuse to provide MassMutual with all of the information it has requested, and initiated this lawsuit against MassMutual.

34. Nevertheless, MassMutual has in the utmost good faith continued to pay total disability and RetireGuard benefits to Plaintiff under reservation of rights in anticipation of receiving the requested information that Plaintiff is duly obligated to provide by the terms of his policy.

## CLAIM FOR RELIEF

### First Cause of Action – Fraud

35. MassMutual incorporates each of the paragraphs above as if set forth herein at length.

36. Plaintiff represented to MassMutual on several occasions that he stopped performing dental work as of January 1, 2014.

37. Plaintiff knew such representations were false and that he did not stop performing dental work until September 2014, at the earliest.

38. Plaintiff made such misrepresentations in order to receive total disability benefits from MassMutual.

39. In reliance on Plaintiff's misrepresentations, MassMutual accepted Plaintiff's claim (with a January 1, 2014 date of disability), and paid him $114,249 in total

1     disability benefits through September 2014.

2          40.     In October 2018, Plaintiff provided MassMutual with documents that

3     showed he did not stop performing dental work until September 2014, at the earliest.

4     Prior to that time, Plaintiff misrepresented that he did not possess information that would

5     indicate exactly when he stopped performing dental work. Accordingly, MassMutual was

6     not aware of Plaintiff's misrepresentations regarding when he stopped performing dental

7     work until October 2018.

8          41.     If Plaintiff had provided true and accurate information concerning the date

9     that he stopped performing dental work, MassMutual would not have paid any benefits to

10     Plaintiff through September 2014, at the earliest.

11         42.     As a result, MassMutual overpaid at least $114,249 in benefits to Plaintiff

12     and therefore has been damaged in such an amount, plus interest thereon at the legal rate.

13          **Second Cause of Action – Unjust Enrichment/Money Had and Received**

14         43.     MassMutual incorporates each of the paragraphs above as if set forth herein

15     at length.

16         44.     MassMutual accepted Plaintiff's claim for total disability benefits, with a

17     January 1, 2014 date of disability.

18         45.     From October 2014 (*i.e.*, the earliest month that Plaintiff was no longer

19     performing dental work) through June 2016, MassMutual paid Plaintiff $470,570 in total

20     disability benefits.

21         46.     In June 2016, Plaintiff informed MassMutual that he was performing work

22     managing his dental practice.

23         47.     In October 2018, Plaintiff claimed that he "has not been substantively

24     involved with the dental practice since MassMutual brought up that disputed issue in June

25     2016."

26         48.     Upon information and belief, Plaintiff managed his practice from the time

27     he stopped performing dental work until June 2016, at the earliest.

28         49.     Under the policy, if Plaintiff is working in any occupation, he is eligible

only for partial disability benefits.

50.     Upon information and belief, if MassMutual had known Plaintiff was working, it would have paid $140,651.57 in partial disability benefits from October 2014 through June 2016, and would not have paid any RetireGuard benefits.

51.     Upon information and belief, Plaintiff received from MassMutual at least $329,918.43 in benefits that he was not rightfully owed.

52.     Upon information and belief, equity requires that MassMutual receive restitution from Plaintiff for the $329,918.43 in benefits that Plaintiff improperly received, plus interest thereon at the legal rate.

### Third Cause of Action – Breach of Contract

53.     MassMutual incorporates each of the paragraphs above as if set forth herein at length.

54.     Under the terms of the policy, Plaintiff is required to submit proof of continuing disability.  *See supra* ¶ 23.  If he fails to do so, MassMutual may stop paying benefits.  *Id.*

55.     Plaintiff has repeatedly failed to submit proof of continuing disability since he informed MassMutual in June 2016 that he was managing his practice.  Specifically, Plaintiff has failed to produce documents responsive to MassMutual's reasonable requests for information necessary to fully evaluate Plaintiff's claim.

56.     Plaintiff's failure to produce responsive documents constitutes a breach of the policy.

57.     Since June 2016, MassMutual has nevertheless paid, in the utmost good faith, well over $700,000 of total disability benefits to Plaintiff under reservation of rights in anticipation of receiving the requested information necessary to fully evaluate Plaintiff's past and future eligibility for benefits.

58.     Because of Plaintiff's failure to produce documents responsive to MassMutual's reasonable requests for information, MassMutual has been and remains unable to fully evaluate Plaintiff's eligibility for benefits.

59.     Upon information and belief, Plaintiff has managed his dental practice since June 2016.   For all months during which Plaintiff managed the business, he would be eligible only for partial disability benefits in an amount significantly less than that which MassMutual has paid in good faith.

60.     Accordingly, MassMutual has incurred damages to the extent that Plaintiff has received benefits that he otherwise would not have received if he provided MassMutual with the information it requested.   The exact amount of damages is to be determined.

WHEREFORE, MassMutual prays for judgment against Plaintiff as follows:

    a.  An award of all overpaid benefits, in an amount to be determined at trial;

    b.  For reasonable attorneys' fees pursuant to A.R.S. § 12-341.01, witness fees and costs of litigation incurred by MassMutual to obtain the overpaid benefits, in an amount to be determined at trial;

    c.  For costs of suit incurred herein; and

    d.  For such other and further relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

MassMutual hereby requests a trial by jury on all triable issues.

DATED this 31st day of January 2020.

JONES, SKELTON & HOCHULI, P.L.C.

By _____
Donald L. Myles, Jr.
Ryan D. Pont
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Attorneys for Defendant Massachusetts
Mutual Life Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of January 2020, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

*/s/Rachel Barajas*